Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 CV 2738 | **DATE** | May 3, 2011 |
| **CASE TITLE** | *CSX Insurance Co. v. Pacific Rail Services* | | |

**DOCKET ENTRY TEXT**

CSX Insurance Co. and CSX Intermodal, Inc.'s motion for fees, nontaxable costs, and interest [191-1] is granted in part and denied in part as detailed below. The court cannot calculate the fees and costs due, however, because of the remaining issues that shall be addressed in supplemental briefs. The court strongly urges the parties to confer in order to reach an agreed-upon award of fees, costs, and interest. In the event that the parties fail to reach such an agreement, supplemental briefing shall proceed as follows: Pacific Rail's supplemental response brief shall be filed by May 31, 2011; CSX's supplemental reply brief shall be filed by June 14, 2011. The court shall rule by mail unless the parties are otherwise notified.

■ [ For further details see text below.]  Docketing to mail notices.

00:00

## STATEMENT

After a bench trial, the court entered judgment in favor of CSX Insurance Co. and CSX Intermodal, Inc. (collectively "CSX") on Count I of their Amended Complaint (the court also entered judgment on many other claims brought by the parties, but those claims are not relevant here). Before the court is CSX's motion for attorneys' fees, related nontaxable costs, and prejudgment interest. Pacific Rail objects to the amount CSX seeks for two reasons: (1) CSX is seeking fees for work unrelated to the sole count on which it prevailed, and (2) the number of hours billed and rates charged are excessive.

The court begins by identifying the source of CSX's entitlement to fees, nontaxable costs, and interest. Successful parties are responsible for their own fees unless a statute or contract provides otherwise. *See Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 734 (7th Cir. 2010). CSX seeks fees, nontaxable costs, and interest under § 14.2 of the parties' Lift Services Agreement, which reads as follows:

> With any Event of Default by [Pacific Rail, Pacific Rail] shall be liable to CSXI for
>
> (a) all expenses (including, but not limited to, legal costs and expenses and attorneys', expert witness, and paralegal fees, including, but not limited to, fees and costs incurred for appellate or bankruptcy proceedings)
>
> (i) incurred by CSXI in curing or seeking to cure such default or in exercising or seeking to exercise any of CSXI's rights and remedies with respect to such default, or

    (ii)  otherwise arising out of such default, plus

  (b)  interest on all such expenses, at the rate of eighteen percent (18%) per annum, all of which expenses and interest will be due and payable by [Pacific Rail] to CSXI upon written demand.

Lift Services Agreement ¶ 14.2 (attached as Exhibit A to the Amended Complaint [16-1]). An Event of Default is defined in ¶ 14.1 in relevant part as follows:

  (a)  a default by [Pacific Rail] in the performance of any of its obligations under this Agreement, which default continues for ten (10) days after written notice from CSXI to [Pacific Rail] designating such default . . .

*Id.* ¶ 14.1.

The court previously concluded in its August 20, 2008, order on CSX's motion for judgment on the pleadings that Pacific Rail breached its obligation to procure the type of insurance required under the terms of the Lift Services Agreement, and therefore granted judgment in favor of CSX on Count I of its Amended Complaint. Pacific Rail asserted that even if it had breached the Lift Services Agreement, no Event of Default had occurred under § 14.2 because CSX's written notice arrived too late for it to cure its breach. *See* Response to Proposed Findings of Fact and Conclusions of Law [142–1] at 47-48. However, Pacific Rail cited no authority to support its position that no event of default had occurred because of the timing of CSX's letters. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) (arguments unsupported by citations to authority are forfeited).

Having established that CSX is entitled to fees, nontaxable costs, and interest under the terms of the Lift Services Agreement, the court now turns to the parties' dispute over the amount of fees and costs (the parties agree that interest shall be calculated according to the rate set out in the Lift Services Agreement once the court determines the underlying amount of fees and costs owed). CSX seeks fees in the amount of $1,075,008.75 plus nontaxable costs in the amount of $92,139.22 incurred through June 2010. Pacific Rail contends that fees due under the Lift Services agreement amount to no more than $141,919.50, plus nontaxable costs of $18,080.56. It identifies two main arguments why CSX is not entitled to the full amount of fees and costs sought. First, Pacific Rail argues that most of the fees and costs CSX seek were not incurred while litigating the issue of failure to procure adequate insurance and, therefore, do not arise out of an Event Default for which fees and costs are allowed. Second, it argues that the number of hours billed by CSX's counsel is excessive, as are counsel's hourly rates.

  **A.**  **Arising Out of an Event of Default**

Pacific Rail contends that CSX should not be awarded fees or costs for work performed after August 20, 2008, the date on which the court granted judgment to CSX on its claim that Pacific Rail breached the Lift Services Agreement by failing to procure adequate insurance. Pacific Rail also seeks to exclude several other categories of fees and costs, including fees and costs incurred (1) in December 2006 and January 2007, when CSX negotiated the settlement of the state court wrongful death lawsuit, (2) for expert witnesses and discovery, and (3) while reviewing deposition transcripts from the state court wrongful death lawsuit.

    *1.*  *Fees and Costs After August 20, 2008*

In support of its position, Pacific Rail argues that fees and costs incurred after the court granted judgment to CSX on Count I should be excluded because work performed after that date was not incurred "in curing or seeking to cure *such default*" or otherwise "arising out of *such default*." Lift Services Agreement ¶ 14.2 (emphasis added). In other words, Pacific Rail contends that because by August 20, 2008, the dispute over the default alleged in Count I—failure to procure adequate insurance—was mostly resolved and, therefore, work performed after that date did not "aris[e] out of such default."

In response, CSX presents three arguments. First, it argues that it is entitled to all fees and costs incurred during the entirety of this lawsuit because the lawsuit would have been unnecessary had Pacific Rail not defaulted on its obligation to purchase adequate insurance. Accordingly, CSX reasons, all of its fees and costs are attributable to Pacific Rail's failure to procure insurance and, therefore, are recoverable under ¶ 14.2 as fees and costs incurred while "curing or seeking to cure" Pacific Rail's default, or "otherwise arising out of such default."

In support, CSX likens the fee and cost provision in ¶ 14.2 to the broad fee provision at issue in *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010), under which a landlord was entitled to fees for "'*any* . . . claim or any action or proceeding' he brings in relation to 'any condition of the Premises.'" (quoting parties' lease with emphasis added). The fee and cost provision in ¶ 14.2 of the parties' Lift Services Agreement stands in sharp contrast to the provision in *Rexam* because under ¶ 14.2, CSX is entitled to recover costs and fees not for any claim or action between the parties but, rather, only for work incurred "curing or seeking to cure," or otherwise arising out of an Event of Default which, in this case, was Pacific Rail's failure to procure adequate insurance. Thus, the narrow fee and cost provision in ¶ 14.2 does not entitle CSX to costs and fees incurred while addressing any of the non-insurance issues litigated by the parties.

Second, CSX argues that it should receive costs and fees incurred even after it obtained judgment on Count I because "the parties have acknowledge[d] the self-evident connection between the rights and remedies asserted under the" Lift Services Agreement, and because Pacific Rail "never distinguished—before, during, or after trial—between the rights and remedies the parties were exercising or seeking to exercise." Memorandum [191-1] at 6. Thus, CSX appears to be arguing that it is entitled to fees and costs for all of its work in this litigation because the parties have treated all of the claims as interrelated. For instance, CSX argues that "Pacific Rail misses the point, which is . . . whether the parties considered, as Pacific Rail now contends, that the insurance and indemnity issues were 'completely unrelated.'" Reply [213-1] at 5. As a result, CSX believes that all of its work was "incurred . . . in curing or seeking to cure" Pacific Rail's default, and that Pacific Rail is estopped from asserting otherwise.

However, CSX's arguments are undeveloped, and it has cited no authority to support its argument that what constitutes an event of default under the Lift Services Agreement turns on the degree to which the parties treated claims in subsequent litigation as interrelated. Moreover, the inquiry under ¶ 14.2 is whether a fee or cost arises out of an Event of Default, not merely whether the fee or cost is "completely unrelated" to an Event of Default. Accordingly, Pacific Rail's second argument is likewise unavailing.

Third, CSX argues that even after the court entered judgment on Count I, Pacific Rail continued to litigate the issue of what insurance it was obligated to purchase under the terms of the Lift Services Agreement. CSX points to the parties' proposed Pretrial Order as an example, where it contends that Pacific Rail identified deposition designations and trial exhibits relevant only to the insurance claim. According to CSX, Pacific Rail's attempt to designate this material as trial evidence led CSX to incur the expense of filing a motion in limine to preclude Pacific Rail's use of such evidence. Similarly, CSX contends that even after trial, Pacific

| STATEMENT |
|---|

Rail again attempted to resurrect the failure to procure adequate insurance claim by urging the court in two separate post-trial briefs to reconsider its decision granting judgment to CSX on Count I. *See* Proposed Findings of Fact and Conclusion of Law [157-1] at 16-20; Motion to Reconsider [157-1] at 1-20.

Because Pacific Rail continued to raise the issue of insurance, CSX continued to incur fees and costs regarding Pacific Rail's default. However, the court suspects that only a small percentage of the fees and costs CSX incurred after the court granted judgment on Count I CSX were incurred while responding to Pacific Rail's arguments about insurance. Unfortunately, the court cannot discern from the billing records provided what that amount of fees and costs was.

Accordingly, the only costs and fees incurred after the court's August 20, 2008, ruling on the motion for judgment on the pleadings to which CSX is entitled under ¶ 14.2 of the Lift Services Contract are those incurred while (1) drafting the portion of the proposed Pretrial Order in which CSX objected to Pacific Rail's proposed evidence that was relevant only to the insurance it was obligated to procure, (2) drafting the memorandum and reply brief in support of CSX's motion in limine to exclude evidence of Pacific Rail's obligation to procure insurance, and (3) responding to the issue of insurance in Pacific Rail's motion to reconsider. However, the court cannot at this time quantify the fees and costs incurred for that work and therefore directs the parties to address the issue in supplemental briefs as detailed below.

### 2. *Expert Witnesses and Discovery*

Third, Pacific Rail argues that fees and costs should be excluded for work relating to expert witnesses and expert discovery because the experts focused solely on the issue of CSX's negligence, not on the issue of Pacific Rail's failure to procure adequate insurance. CSX did not respond to Pacific Rail's argument. Accordingly, the fees and costs incurred regarding expert witnesses and fees will not be allowed.

### 3. *Reviewing Wrongful Death Deposition Transcripts*

Fourth, Pacific Rail seeks to exclude "fees and costs related to review of certain deposition transcripts from the" state court wrongful death lawsuit. However, neither party has identified the transcripts at issue, or explained why counsel's review either did or did not relate to the claim in Count I that Pacific Rail breached its obligation to purchase adequate insurance. As a result, the court has no basis upon which to conclude that the fees and costs are allowed under ¶ 14.2. Accordingly, the costs and fees to review the wrongful death transcripts will not be allowed.

### B. **Hours Billed and Hourly Rates**

Next, Pacific Rail objects to the number of hours billed and the hourly rates charged by CSX's counsel, both of which it contends were excessive. In support, Pacific Rail provides an analysis of CSX's billing records, taking issue with the number of hours spent on particular projects (for example, "CSX's attorneys spent 28.75 hours and billed fees of $12,476.25 for preparing CSX's nine page Complaint and its Amended Complaint"), as well as hourly rates (for example, "rates for paralegals Rosanna DePinto and Cheryl Kras averaged an incredible $270 per hour"). Response [212-1] at 9, 13.

In cases where fees are due under a contractual arrangement between parties, as opposed to a fee-shifting statute, "individual scrutiny of line-item entries is neither necessary nor appropriate." *Metavante v. Emigrant Savings Bank*, 619 F.3d 748, 774 (7th Cir. 2010). "Instead of doing a detailed, hour-by-hour review after the

fashion of a fee-shifting statute," the court should focus on the "aggregate costs to ensure that they were reasonable in relation to the stakes of the case." *Medcom Holding Co. v. Baxter Travenol Labs.*, 200 F.3d 518, 521 (7th Cir. 1999). Factors relevant to the reasonableness of the aggregate fees sought include (1) whether the movant "paid all of [its legal] bills at a time when its ultimate recovery was uncertain," and (2) how the fees the movant paid and now seeks to recover compare to the fees incurred by the opposing party. *Id.*

Pacific Rail does not dispute that CSX paid its bills at a time before CSX was assured that the fees would be shifted. The court also notes that the bills were directed to the then-president and general manager of one of the parties—CSX Insurance Co.—who, as a corporate officer, had "a duty, imposed by various provisions of federal and state law, to scrutinize the bills before paying them." *Metavante*, 619 F.3d at 775 n.22. Such a duty to scrutinize adds to the weight afforded this factor. *Id.* Therefore, this factor favors a conclusion that the fees CSX incurred prior to the August 20, 2008, entry of judgment on the pleadings were reasonable.

However, Pacific Rail contends that as applied to the facts of this case, the second factor favors a finding that CSX's fees were unreasonable. Specifically, Pacific Rail argues that the hourly rates charged by CSX's counsel in this case were more than twice the rates charged by Pacific Rail's counsel, as well as CSX's counsel in the state court wrongful death proceeding. However, hourly rates in a vacuum provide little insight into the reasonableness of aggregate costs because it fails to also take into account efficiency. In other words, an attorney who charges a higher hourly rate may be more productive than an attorney who charges a cheaper rate and, therefore, bills fewer hours to accomplish the same work. For that reason, the total number of hours billed, and by whom, is a necessary component to any comparison of aggregate costs. Unfortunately, neither party has broken down each side's aggregate costs for the period up to the court's entry of judgment on the pleadings on August 20, 2008. As a result, the court is left with no ability to draw any comparison between the fees CSX incurred and those incurred by Pacific Rail.

Because of the incomplete record of aggregate costs incurred during the relevant time period, the court cannot properly analyze and weigh this factor, and therefore cannot fully determine the reasonableness of the fees and costs sought. Accordingly, the parties are directed to file supplemental briefs addressing the fees and costs incurred through August 20, 2008, as well as those billed afterwards in response to Pacific Rail's renewed arguments about its obligations to purchase insurance in the pretrial order, motions in limine, and motion to reconsider. Briefs shall be filed in accordance with the schedule detailed below.

The court notes that Pacific Rail has also objected to CSX's request to be reimbursed for its work in December 2006 and January 2007 to settle the state wrongful death proceeding. Pacific Rail objects not based upon an argument that work to settle the state court suit falls outside the scope of § 14.2 but, rather, that the fees were unnecessarily duplicative because CSX already had other, cheaper attorneys negotiating to settle that suit. However, as discussed above, because fees are due under the parties' contract, the court will not individually scrutinize the fees to determine whether they are duplicative but, rather, will merely evaluate aggregate costs. *See Metavante*, 619 F.3d at 774 ("individual scrutiny of line-item entries is neither necessary nor appropriate").

## CONCLUSION

For the reasons given above, the court grants CSX's motion for an award of fees, nontaxable costs, and interest in part as follows: fees and costs shall be allowed only for the period through August 20, 2008, plus fees and costs incurred after that date while: (1) drafting the portion of the proposed Pretrial Order in which CSX objected to Pacific Rail's proposed evidence that was relevant only to the insurance it was obligated to procure, (2) drafting the memorandum and reply brief in support of CSX's motion in limine to exclude evidence of

**STATEMENT**

Pacific Rail's obligation to procure insurance, and (3) responding to the issue of insurance in Pacific Rail's motion to reconsider. However, unaddressed issues leave the court unable to calculate the amount of fees and costs due. Accordingly, it directs the parties to file supplemental briefs addressing the following issues: (1) the fees and costs CSX incurred through August 20, 2008, plus the fees and costs spent on those portions of the pretrial order, motions in limine, and motion to reconsider addressing the claim in Count I of CSX's amended complaint regarding insurance coverage; and (2) a comparison of the aggregate costs incurred by CSX and Pacific Rail for the work just described.

In light of the rulings in this order, the court strongly urges the parties to confer among themselves and to resolve their differences in order to arrive at an agreed-upon amount of fees and costs owed.

In the event that the parties fail to reach such an agreement, supplemental briefing shall proceed as follows: Pacific Rail's supplemental response brief shall be filed by May 31, 2011; CSX's supplemental reply brief shall be filed by June 14, 2011. The court shall rule by mail unless the parties are otherwise notified.

rs/cpb